## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.Gayen Hancock, | ) | |
| 2.David Cross, | ) | |
| 3.Montez Mutzig, and | ) | |
| 4.James Bollinger, Individually | ) | |
| and on Behalf of All Others Similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -v- | ) | Case No.: CIV-10-822-L |
| | ) | |
| 1.American Telephone and Telegraph | ) | |
| Company, Inc, | ) | |
| 2.AT&T Operations, Inc., | ) | |
| 3.Southwestern Bell Telephone Company, | ) | |
| L.P., | ) | |
| 4.Pacific Bell Telephone Company, | ) | |
| 5.Illinois Bell Telephone Company, | ) | |
| 6.Indiana Bell Telephone Company, | ) | |
| Incorporated, | ) | |
| 7.Michigan Bell Telephone Company, | ) | |
| 8.Nevada Bell Telephone Company, | ) | |
| 9.The Ohio Bell Telephone Company, | ) | |
| 10.Wisconsin Bell, Inc., | ) | |
| 11. The Southern New England Telephone | ) | |
| Company, | ) | |
| 12. Bellsouth Telecommunications, Inc., | ) | |
| 13. AT&T Southeast, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

### CLASS ACTION COMPLAINT

Plaintiffs Gayen Hancock, David Cross, Montez Mutzig, and James Bollinger,

individually, and on behalf of all others similarly situated, sue the Defendants,   American

Telephone and Telegraph Company, Inc, AT&T Operations, Inc., Southwestern Bell Telephone

Company, L.P., Pacific Bell Telephone Company, Illinois Bell Telephone Company, Indiana

Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, Nevada Bell

Telephone Company, The Ohio Bell Telephone Company, Wisconsin Bell, Inc., The Southern New England Telephone Company, and BellSouth Telecommunications, Inc. (each individually and collectively referred to as "AT&T"), and says as follows:

## NATURE OF ACTION

1.      This is an action asserting unjust enrichment, breach of contract, breach of the implied covenant of good faith, fraud, conversion, and other causes of action, and for declaratory relief, in connection with the systemically defective VHDSL (Very High Bit-rate DSL) technology designed, manufactured, marketed, advertised, and sold or rented by AT&T under the brand name "U-verse." AT&T markets U-verse as affording very high internet speeds, the capacity to watch or record multiple TV or HDTV channels at once on different TV sets or DVR's, and clear VoIP (Voice over Internet Protocol telephony).

2.      There are approximately 2,000,000+ homes utilizing AT&T's  U-verse system, plagued by defects and deficiencies, resulting in, *inter alia*, slow connections, disconnects and/or repeated interruptions in service, inability to watch different shows on different TV sets, freezing of movies or HD television channels, failed phone connectivity and poor signal qualities.  These defects are caused by defective system-wide design flaws, reflecting an intentional and willful decision by AT&T to sacrifice quality for greater profits.

3.      U-verse – hyped and over-promoted as a technological advance – fails of its essential purpose, in that its defective design and inferior infrastructure, built on old copper wiring, rendered it obsolete before it ever began.

### JURISDICTION AND VENUE

4.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §1693m. This is an action for violation of 18 U.S.C. § 1961 *et seq.* and the common law of Oklahoma and of other States.

5.   Jurisdiction in this civil action is also authorized pursuant to 28 U.S.C. § 1332(d), as Plaintiffs' citizenship is diverse from all defendants, and the aggregated amount in controversy exceeds five million dollars $5,000,000.00.

6.   This Court has supplemental jurisdiction over Plaintiffs' State and common law causes of action, pursuant to 28 U.S.C. § 1367(a).

7.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as  a substantial part of the events and or omissions giving rise to the claims emanated from this judicial district, Plaintiff Gayen Hancock is a citizen of Oklahoma, residing in Oklahoma City, and the AT&T defendants are engaged in substantial U-verse business here.

**PARTIES**

8.   Plaintiff Gayen Hancock ("Hancock") is a citizen and resident of the State of Oklahoma, is *sui juris* and resides in Oklahoma City, Oklahoma.

9.   Plaintiff David Cross ("Cross") is a citizen and resident of the State of Oklahoma, and is *sui juris*.

10.   Plaintiff Montez Mutzig ("Mutzig") is a citizen and resident of the State of Oklahoma, and is *sui juris*.

11.   Plaintiff James Bollinger ("Bollinger") is a citizen and resident of the State of Florida, and is *sui juris*.

12.      Defendant American Telephone and Telegraph Company, Inc., formally known as AT&T, Inc. (herein "AT&T"), is a Delaware corporation with its principal place of business located in Dallas, Texas.

13.      Defendant AT&T Operations, Inc. is a Texas corporation with its principal place of business located in San Antonio, Texas.

14.      Defendant Southwestern Bell Telephone Company is a foreign corporation with its principal place of business located in Dallas, Texas.

15.      Defendant Pacific Bell Telephone Company is a foreign corporation with its principal place of business located in San Francisco, California.

16.      Defendant Illinois Bell Telephone Company is a foreign corporation with its principal place of business located in Chicago, Illinois.

17.      Defendant Indiana Bell Telephone Company, Inc. is a foreign corporation with its principal place of business located in Indianapolis, Indiana.

18.      Defendant Michigan Bell Telephone Company is a foreign corporation with its principal place of business located in Detroit, Michigan.

19.      Defendant Nevada Bell Telephone Company is a foreign corporation with its principal place of business located in Reno, Nevada.

20.      Defendant The Ohio Bell Telephone Company is a foreign corporation with its principal place of business located in Cleveland, Ohio.

21.      Defendant Wisconsin Bell, Inc. is a foreign corporation with its principal place of business located in Milwaukee, Wisconsin.

22.      Defendant The Southern New England Telephone Company is a foreign corporation with its principal place of business in New Haven, Connecticut.

23.     Defendant AT&T Southeast is a foreign corporation with its principal place of business located in Atlanta, Georgia.

## CLASS ACTION ALLEGATIONS

24.     This action seeks money damages and declaratory relief for Defendants' wrongdoing under the laws of the State of Oklahoma and the common law of the other States. Plaintiffs and The Class seek compensatory and punitive damages for each class member for the Defendants' fraud and other wrongful conduct as alleged herein.

25.     Certification under Rule 23(b)(3) Fed. R. Civ. P. is proper.

26.     Plaintiffs seek certification of a nationwide class action against all named Defendants for the fraud and other wrongful conduct alleged in this Complaint. The Class consists of the following: "All residents of the United States who subscribed to U-verse." Said Class is further defined as follows:

a)      Those persons living on the date that final judgment is entered in this action;

b)      Those persons who do not have pending against a named Defendant, on the date of the Court's certification order, any individual actions wherein the recovery sought is based in whole or in part on the type of claims asserted herein;

c)      Those persons who, with regard to a particular Defendant herein: have previously obtained a judgment; have settled any claims identical to those asserted herein; have previously executed releases; have actually signed an arbitration agreement concerning U-verse services; are employees or any subsidiary thereof.

27.    Rule 23(a), and Rule 23(b), Fed. R. Civ. P. requirements are met because:

    a)    Named Plaintiffs estimate that the proposed class consists of not less than several hundred thousand members throughout the United States, and joinder of all members in this action is impracticable.

    b)    There are questions of law and fact common to The Class.

    c)    The common questions predominate over any questions affecting only individual members.

    d)    Named Plaintiffs are adequate representatives of The Class. The claims of Named Plaintiffs as class representatives are typical of those of The Class in that Named Plaintiffs were subjected to the same unlawful treatment and suffered the same type of harm as that suffered by other members of The Class. Named Plaintiffs will vigorously pursue the claims on behalf of The Class, and will fairly and adequately protect the interests of The Class.  Named Plaintiffs' counsel is experienced and professionally able to properly represent The Class.

    e)    The claims of Named Plaintiffs are typical of the claims of each member of The Class, and are based on or arise out of similar facts constituting the wrongful conduct of the Defendants.

    f)    A class action is far superior to any other available method for the fair and efficient adjudication of this controversy.

28.    This action complies with The Class Action Fairness Act of 2005:

    a)    This Court has original jurisdiction of this civil action because the controversy exceeds the sum or value of $5 million, exclusive of interest

and cost, and is a class action in which there are members of a class of plaintiffs who are citizens of States different from Defendants; there are members of the class of plaintiffs who are citizens of foreign States and there are Defendants who are not citizens of this State; and there are members of the class of plaintiffs who are citizens of this State, as well as Defendants who are citizens of foreign States.

b)      Upon information and belief, Named Plaintiffs assert that less than 1/3 of the proposed class members in the aggregate are citizens in this State.

26.   Prerequisites to a Class Action – Fed. R. Civ. P. 23(a). The prerequisites to maintaining this action as a Class action are satisfied in this case as alleged below.

a)      Numerosity – On information and belief, there are more than Two Million residential AT&T "U-Verse" subscribers. All or most of these subscribers of AT&T U-Verse systems suffer from the same or similar defects in design and marketing.   Although the exact number of such persons is unknown to Named Plaintiffs at this time, Defendants' records should contain information on the identities and location of all such parties. Because Defendants have exclusive control of such information, Named Plaintiffs reserve the right to amend their allegations following completion of discovery. Given the scope of the Defendant's business in Oklahoma and other States, it is clear that the members of The Class are so numerous that joinder is impracticable and the disposition of their claims in a class action will provide substantial benefits to both the parties and this Court.

b)    Commonality – Since Named Plaintiffs and other members of The Class were parties to standardized adhesion contracts (and/or were affected by other common and standardized instruments written exclusively by Defendants), containing similar or identical provisions, which Defendants have invoked to commit fraud by omission, there are questions of law and fact common to The Class. Such common questions of law and fact predominate over any individual questions affecting class members, including but not limited to the following:

(1)    Whether AT&T's design and service failures breach the contractual promises created by its marketing?

(2)    Whether AT&T's design and service failures, and refusal to adequately fund the infrastructure required to support the 2,000,000 U-verse users, breach the implied covenant of good faith and fair dealing?

(3)    Whether AT&T's conduct is so widespread that nationwide class certification is appropriate?

(c)    Typicality – Named Plaintiffs have the same interests in this matter as all the other members of The Class, and their claims are typical of all members of The Class. Named Plaintiffs' claims are typical of the claims of all class members because: the claims originate from the same practices on the part of AT&T and its acts in furtherance thereof, and Named Plaintiffs and all class members have sustained similar damages caused by this same pattern of conduct.

(d)     Adequacy of Representation – Named Plaintiffs' claims are aligned with the interests of the absent members of The Class such that The Class claims will be prosecuted with diligence and care by Named Plaintiffs as representatives of The Class. Named Plaintiffs are committed to pursuing this action, and have retained competent counsel experienced in the prosecution and successful resolution of class litigation. Named Plaintiffs will fairly and adequately represent the interests of The Class and do not have interests adverse to The Class. Because Named Plaintiffs' interests are antagonistic to the interests of the Defendants, Named Plaintiffs will vigorously pursue the claims of The Class.

(e)     Class Actions Maintainable – Fed. R. Civ. P. 23(b)(3). Class action status is also appropriate because the common question of law and fact identified above predominate over questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Because of the relatively small monetary value of each class member's individual claim, few, if any, class members have an interest in individually controlling the prosecution of separate actions. It is desirable to concentrate the litigation of the claims in this District. Neither Named Plaintiffs nor their counsel anticipate encountering any unique difficulties in the management of this action as a class action.

## STATEMENT OF THE FACTS

27.     AT&T states that U-verse allows consumers to receive up to four standard (or two HD)
        TV channels at once on various televisions or DVRs (Digital Video Recorders) in the
        home, permits any television to record and play back any show and provides for
        extremely high speed internet connections, as well as clear VoIP. What AT&T fails to
        disclose is that none of these things seem to actually work.

28.     Plaintiff Hancock purchased or subscribed to AT&T's U-verse on or about May 15, 2010
        following solicitation by a door-to-door salesman peddling U-verse. Hancock has paid all
        charges, and was promised a $300 rebate which he never received. Hancock has already
        experienced the following problems: (a) extremely slow and variable internet connection
        speeds, slower than regular DSL and often as slow as old "dial up" connections, causing
        long delays in web page downloading and repeated "no signal" or connection
        interruptions, requiring rebooting or reconnecting to the internet (b) inability to watch
        more than one television channel in the house at one time (c) inability to watch a movie
        or HDTV without the signal dropping, frames freezing and pixelization (d) repeated lack
        of signal and (e) delays, static and other interference in VOIP calls, along with extremely
        poor customer service.

29.     Plaintiff Mutzig purchased or subscribed to AT&T's U-verse on or about September 16,
        2008.  Dr. Mutzig was also solicited by a salesperson peddling U-verse door-to-door. Dr.
        Mutzig has experienced the following problems with AT&T's U-verse: (a) her E-mail
        doesn't always work, (b) the "very high speed internet" is extremely slow with variable
        internet connection speeds, slower than regular DSL and often as slow as old "dial up"
        connections, causing long delays in web page downloading and repeated "no signal" or
        connection interruptions, requiring rebooting or reconnecting to the internet (c)   she

cannot get through to customer service which is perpetually "busy" due to understaffing and lack of support (d) the television "pause" feature doesn't work on one TV,  (e) inability to watch a movie or HDTV without the signal dropping, frames freezing, pixelization (f) repeated lack of signal and (g) delays, static and other interference in VOIP calls, along with extremely poor customer service.

30.     Plaintiff Cross first purchased or subscribed to AT&T U-verse in late 2009.  He has paid all charges assessed by AT&T and has experienced the following defects: (a) the HDTV "freezes" on the Fox channel and then he can't get out of it, (b) he was sold a feature that would display incoming call information on his television screen but this feature has never worked and (c) his internet access speed is slow and variable, and sometimes doesn't work at all.

31.     Plaintiff Bollinger purchased or subscribed to AT&T's U-verse in September 2009.  He has experienced the following defects:  (a) the internet access is slow, variable and disconnects him, (b) the television signals and movies "freeze" while he is attempting to watch them, forcing him to restart movies or reconnect to the channel, or change channels and (c) there is poor customer service and technical support.  In addition, the AT&T installer "blew out" Bollinger's hard drive during the installation, and AT&T has never made good on the damages.

32.     Named Plaintiffs' experiences with AT&T's problems are the same as or similar to all customer's experiences.   The aforesaid defects with U-Verse have occurred on a nationwide scale.   The following are excerpted from internet postings of various consumer complaints from all over the United States:

"Considering going to U-Verse?? BEWARE!! I did it about 3 weeks ago, and my fiancee almost kicked my  ---. We were doing well with Comcast, and their triple play for internet, TV, and phone. The sales guy for UVerse went door to door, and sold us on a bill of goods that was CRAP! The high speed internet is nothing more than a souped by DSL that comes down by PHONE LINE! The speed is slow, and the internet speed is nothing compared to what I got with Comcast. I could write a book, but I had trouble with the installation tech, the people at tech support, and even the sales guy that came to my door to sell it to me. After 20 days of this, we said NO WAY, we are going back to Comcast. This U-VERSE stuff is not ready for prime time, and they should have never rolled it out with all this trouble!"

"I have had ATT Screwverse for 3 months now-its the most unreliable service I've ever seen. Last night, after the cable, dvr, telephone and internet went out for the upteenth time-I got the phone book out and called another service provider.  I've waited on average 9-20 hours for a technician to get out here each time I've called them (and its been numerous times) Yesterday, after the tech left (took them 20 hours to get out here) the service failed after only a couple of hours. I get excuses like "you're too far from the box" "basically it will go out anytime a squirrel nibbles on it" etc etc. You get my drift.  Its horrible-now I'm going to try and get them to refund my money. lol Good luck with that."

"The service for some reason was good for several months, but then in the last 3 months (right after I foolishly gave them a referral)it has been a uverse nightmare."

"Many of the same problems of the aforementioned. The main DVR sometimes says no signal, but the other 2 TV's and boxes in the house are fine, it will reboot itself one to several times in a day, freeze up, erase my entire library of recorded shows whenever it feels like it, not record at all, or miss part of what one is recording because the reboot happened while one is trying to record something...but right now I have been waiting for 2 days for the tech to show up and I am ANGRY."

"We have had the same problem here, since we got Uverse in Oct 2008 I would say each week there's a tech here. In Nov 2008 they said it was the Uverse modem box and that didn't solve the problem, then in January of 2009 they said they had to replace the DVR box, now remind you we had not seen all our shows that we had recorded, we kept getting the freezing, then like one gear wheel then two gear wheel then an red x, I would have to reboot the box about fifteen time before it would come back up. We could not see or watch what we had recorded. Like with satellite when we changed over to Uverse, we told them we still had some recording that we had not seen yet, they told us how to hook it up by video cables only and watch it. Which we did. With Uverse they told us, nope that will not work, you just can't watch those shows you recorded. We have given Uverse enough time to solve these problems. I'm tried of the freezing which we still get, there's no such thing as back up the live show to see what you missed, it freeze. There's too many problems with Uverse, and they have gone up on the none dvr boxes that does nothing, I've had it, tried to give it a chance but it's not worth it."

"I have had Uverse since the beginning of April and had many problems. After 2 months I have figured out that my problems are not within my apartment, but the outside lines called "dirty copper". I wish ATT would address this issue in a prompt manner. I have connection problems on a daily basis and that is very frustrating indeed. The techs on the phone are very polite and helpful. The biggest problem (apart from the dirty copper wires) is that the have a terrible communication problem, as in no communications at all. Often I talked to a tech in the morning and call back to cancel an appointment, the tech still shows up because he was not contacted, and this has been happening every time!!! I have given up being a good costumer and canceling my appointments. Unfortunately there is no easy answers for any of this. All I want ATT to do is to address the copper wire problem PLEASE.   There are days I want to pull my hair out but what can you do (-:  I will stick with ATT for a bit longer before I go back and sign up with another problematic provider"

". . . [T]oday is July 11, and I just read of your problems with U Verse. We live in a suburb of Cleveland, Ohio and have had U Verse for about 18 months. We had exactly the same problems as you have written about. I loved the customer service, the techs always showed up on time and were very courteous. I loved the service when it worked. the problem was it very seldom worked. I work nights and would watch tv late at night. Every night at 4:00 a.m, all the channels would go into "child lock mode." Usually in about an hour, they would unlock. Freezing and pixelating was common, especially in the winter or when it rained.  I finally gave up last week and went back to cable. I kept <u>AT&T</u> voice and internet, but the

tv service had to go. I had techs here frequently and each one pronounced it 'fixed'. Maybe someday they will perfect it, but it has a long way to go."

33.     AT&T fraudulently and intentionally failed to disclose to consumers, including Named Plaintiffs, serious and material defects in the U-Verse system, which defects were intrinsic in the failed design of the system.   AT&T deliberately underfunded the infrastructure needed to provide adequate service, and boasted its capital expenditures per customer were less than half of its rival, Verizon.

34.     AT&T had superior knowledge about material defects within its U-Verse system, and had a duty to disclose those material defects, including but limited to the following:

(a)     AT&T failed to invest in adequate capacity and oversold the network with the result that too many people were sharing the same capacity, signals were being transmitted over old twisted pair copper wires, and old technology, bringing connection speeds down to dialup and below DSL rates, or downright disconnecting or "bumping" consumers from the internet;

(b)     AT&T failed to design the system to perform as marketed and intended, such that consumers could not simultaneously stream multiple HDTV or even standard TV signals, movies were constantly interrupted with freezing, buffering, and other delays, blank screens, movies would "disappear, and the system would rarely perform as expected or intended;

(c)     AT&T failed to disclose the aforesaid defects in its U-verse system, and failed to disclose that watching a movie or HDTV channel would be a frustrating, head-banging experience with the concomitant freezing,

pixellation, disconnects, reboots and interruptions, and that internet speeds were mind-numbingly slow due to end of life technology, an old copper wire infrastructure and a woeful lack of capacity.

## COUNT I
## VIOLATION OF 18 U.S.C. § 1961 et seq. "RICO"

35.     Named Plaintiffs adopt and incorporate by reference all prior paragraphs of this
        Complaint as if fully set forth herein.

36.     Defendants named herein constitute an "enterprise" pursuant to 18 U.S.C. § 1961(4)
        and/or 18 U.S.C. § 1962(c).

37.     Defendants associated with and through the enterprise to engage in tortious conduct by
        directing, participating with and managing the enterprise in a pattern of racketeering
        activity by which Defendants are engaged in a "wheel and hub" conspiracy wherein
        AT&T lends its centralized command and control and is aided and abetted by the
        multiple other named Defendants.

38.     The enterprise described herein was engaged in interstate commerce while implementing
        and directing its racketeering activity.

39.     Defendants' racketeering activity included multiple violations of 18 U.S.C. § 1341 and
        18 U.S.C. § 1343.

40.     Racketeering activities of Defendants in furtherance of the enterprise included, among
        other things, the conduct and activities heretofore described in this Complaint.

41.     Defendants' racketeering activities include, but are not limited to, the marketing, sales
        and delivery of nonconforming, defective and inoperable U-Verse systems which failed
        of their essential purpose and were unfit, mislabeled and falsely advertised to Named
        Plaintiffs and The Class.

42.     Defendants further entered into a conspiracy in violation of 18 U.S.C. § 1962(d).

43.     As a proximate result of the conduct of the RICO Defendants, Named Plaintiffs and The
        Class suffered damages that are continuing in nature and are not fully ascertained.

44.     Wherefore, Named Plaintiffs hereby demand compensatory and punitive damages in an amount to be proven at trial, treble damages and attorney fees, plus interest and costs.

## COUNT II
## FRAUD

45.     Named Plaintiffs hereby adopt and incorporate herein by reference all prior paragraphs of this Complaint as if set out here in full.

46.     As previously described herein, Defendants committed fraud by omission that Named Plaintiffs and members of The Class relied upon to their detriment.

47.     Said misrepresentations were made with the knowledge and intent that they be relied upon, and/or the representations were made negligently and/or wantonly and/or willfully and/or recklessly and/or intentionally with disregard for their truthfulness.

48.     As a proximate result of the fraud committed by Defendants, Named Plaintiffs and The Class suffered damages that are continuing in nature and as yet have not been fully ascertained.

49.     The conduct of Defendants was willful and/or wanton and/or reckless and/or intentional, such that the imposition of punitive damages is justified and warranted.

50.     Wherefore, Named Plaintiffs hereby demand compensatory and punitive damages from Defendants, jointly and severally, in an amount to be determined at trial, plus interest and costs.

## COUNT III
## CIVIL CONSPIRACY

51.     Named Plaintiffs hereby adopt and incorporate herein by reference all prior paragraphs of this Complaint as if fully set forth herein.

52.   Defendants actively and deliberately conspired with one another to engage in and accomplish the acts described herein, which have proximately resulted in damages to Named Plaintiffs and The Class members.

53.   The conduct of Defendants was willful and/or wanton and/or reckless and/or intentional, such that the imposition of punitive damages is justified and warranted.

54.   Wherefore, Named Plaintiffs hereby demand compensatory and punitive damages from Defendants, jointly and severally, in an amount to be determined at trial, plus interest and costs.

### COUNT IV
### CONVERSION

55.   Named Plaintiffs re-allege all prior paragraphs of this Complaint as if fully set forth herein.

56.   AT&T has taken, reserved, received, collected and converted unauthorized, undeserved, unearned charges from Named Plaintiffs and The Class based on a false and illegal claim of right.

57.   Named Plaintiffs and the members of The Class have been deprived of the money and the use of such money that AT&T has taken, charged, converted, used and received under its false claim of right, and have suffered damages as a result.

58.   Such wrongful actions and conduct are ongoing and continuing. Unless Defendants are required to disgorge the illicit moneys, members of the consuming public will continue to be damaged by Defendants' conduct.

59.   As a result of Defendants' unlawful acts and conduct, Named Plaintiffs and The Class were deprived of the use of their money that was unlawfully converted by Defendants, and are therefore entitled to restoration of their money, along with interest thereon from

the date the money was converted by Defendants to the date of judgment, compensatory

damages and punitive damages.

## COUNT V
### UNJUST ENRICHMENT

60.    Named Plaintiffs re-allege all prior paragraphs of this Complaint as if fully set forth

herein.

61.    Defendants' success in extracting monies from Named Plaintiffs and The Class members

without their authorization amounts to unjust enrichment.

62.    Defendants' sales of defective and improperly marketed equipment and services results in

a windfall to Defendants.

63.    Defendants were unjustly enriched at the expense of Named Plaintiffs and The Class by

their collection of charges from the marketing of defective and nonconforming U-Verse

equipment and defective services, and it would be unjust to permit Defendants to retain

the proceeds of their ill-gotten gains.

64.    By reason of the foregoing, Defendants are liable to Named Plaintiffs and The Class for

damages incurred as a result of Defendants' actions, the amount of such damages to be

determined at trial.

## COUNT VI
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

64.    Named Plaintiffs re-allege all prior paragraphs of this Complaint as if fully set forth

herein.

65.    Defendants' provision of goods and services includes not only express written provisions,

if any, but also those terms and conditions which, although not formally expressed, are

implied by law.

66.  Such implied terms are as binding as the terms that are actually written.

67.  Inherent in all contracts and agreements is an implied covenant that the parties will act in good faith and deal fairly with each other in the performance of their respective covenants and obligations under the contract, and that they will not take any action that will injure the other party or compromise that party's benefit of the contract.

68.  The obligations of Defendants to abide by the implied covenant of good faith and fair dealing is heightened by the substantial imbalance of power between Defendants and Named Plaintiffs, which imbalance allows Defendants to implement the business scheme described in detail in this Complaint (incorporated by reference).

69.  By subscribing to Defendants' services, Named Plaintiffs and The Class had reasonable expectations to receive the benefits of the services.

70.  Furthermore, by subscribing to Defendants' services, Named Plaintiffs and The Class had reasonable expectations that the U-verse system would provide functional, very high speed internet, clear and functional telephony, and streaming video that would permit them to enjoy watching a movie or television show without interruption.

71.  AT&T has breached the implied covenant of good faith and fair dealing by virtue of the deceptive practices described herein, and by acts independent of the deceptive practices.

72.  AT&T has denied Named Plaintiffs and The Class the benefit of their reasonable expectations by failing to provide the very high speed internet, phone and streaming video services promised and expected.

73.  AT&T's breach of the implied covenant of good faith and fair dealing was a substantive factor causing damages to Named Plaintiffs and The Class.

## COUNT VII
## BREACH OF CONTRACT

74.   Named Plaintiffs incorporate by reference each of the preceding allegations as though fully set forth herein.

75.   The advertisements, door-to-door scripts or handouts, circulars, brochures and other similar uniform representations disseminated by AT&T regarding the U-verse were, and are, affirmations of fact and/or promises with regard to the performance and quality of the U-verse system.  These representations formed, in whole or in part, the basis of the bargain as between AT&T and members of The Class, and are part of the contract.

76.   As described above, Class Members' U-verse systems did not conform to these warranties, representations, and statements.

77.   AT&T posts inconspicuous "Terms of Service" on its website, but never provided a copy to any Named Plaintiff or member of The Class. The Terms of Service are boilerplate, adhesion instruments because there is no bargaining allowed.  The fine print in the Terms of Service is unconscionable and grossly inadequate to protect Named Plaintiffs and the other members of The Class who had no meaningful choice in determining the limitations, the terms unreasonably favor AT&T over members of The Class, there exists a gross disparity in bargaining power between AT&T and members of The Class, and AT&T knew the U-verse system was defective and would fail to perform as represented.

78.   Named Plaintiff and The Class members have suffered damages that were directly and proximately caused by Defendants' breach of the aforesaid representations and warranties. Named Plaintiffs and the members of The Class are entitled to damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiffs, individually and on behalf of the proposed Class, pray for judgment as follows:

### A.

Certification of the proposed Class pursuant to Federal Rules of Civil Procedure Rule 23 (a), (b)(2), and (b)(3);

### B.

Designation of Named Plaintiffs as representative of the proposed Class, and designation of Named Plaintiffs' counsel as Class counsel;

### C.

An award of compensatory damages, the amount of which is to be determined at trial;

### D.

An award to Named Plaintiffs and The Class prejudgment interest, costs and attorney fees;

### E.

An award to Named Plaintiffs and The Class of such further relief as this Court deems just and proper.

### F.

Punitive damages.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Named Plaintiffs hereby demand a trial by jury.

Signed this 30th day of July, 2010.

23

Respectfully Submitted,

Richard Denney, OBA No. 2297
Lydia Barrett, OBA No. 11670
Jason Eric Robinson, OBA NO. 22289
DENNEY & BARRETT, P.C.
870 Copperfield Dr., Ste. A
Norman, OK 73072
Telephone: 405/364-8600
Facsimile: 405/364-3980
Email: rdenney@dennbarr.com
        lbarrett@dennbarr.com

Leon R. Russell
RUSSELL & SHIVER, L.L.P.
3102 Oak Lawn Ave.; Ste. 600,
Dallas, TX 75219
Telephone:  214/443-0800
Facsimile:  214/443-0898
Email: leon@rs-attorneys.com
(*Motion for Admission Pro Hac Vice pending*)

Larry Coben
COBEN & ASSOCIATES
8710 East Vista Bonita Drive
Scottsdale, AZ 85255
Telephone: 480/515-4745
Facsimile: 480/515-4744
Email: LCoben@cobenlaw.com
(*Motion for Admission Pro Hac Vice pending*)

Robert N.M. Palmer
THE LAW OFFICES OF PALMEROLIVER, P.C.
205 Park Central East
Suite 511
Springfield, MO 65806
Telephone: 417/865-3234
Facsimile: 417/865-1698
Email: palmer@palmerlaw.com
(*Motion for Admission Pro Hac Vice pending*)

Marcus W. Viles
VILES & BECKMAN, LLC
6350 Presidential Court

24

Fort Myers, FL 33919
Telephone: 239/334-3933
Facsimile: 239/334-7105
Email: marcus@vilesandbeckman.com
(*Motion for Admission Pro Hac Vice pending*)